**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| FRANK LORENZO GIOVINCO,<br><br>                         Petitioner,<br><br>vs.<br><br>KATHY MENDOZA-POWERS,<br><br>                         Respondent. | Civil No.    07cv0585-JAH (JMA)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.    INTRODUCTION AND PROCEDURAL BACKGROUND**

Frank Lorenzo Giovinco (hereinafter "Giovinco"), a state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus in the Northern District of California on February 21, 2007, which was transferred to the Eastern District of California (Fresno Division) on April 16, 2007 [doc. nos. 1 & 2]. On November 25, 2008, the Petition was reassigned to visiting District Judge John A. Houston for all further proceedings [doc. no. 16] and, on December 18, 2008, the Petition was assigned to visiting Magistrate Judge Jan M. Adler for all non-dispositive motions and matters and for such dispositive motions and matters as assigned [doc no. 17].

Giovinco is serving a prison sentence of 16 years to life after being convicted by jury of second degree murder with use of a knife. (Petition (hereafter, "Pet.") at ¶¶ 1-5; Respondent's Answer (hereafter, "Answer") [doc. no. 10], Ex. 1, Abstract of Judgment.) Giovinco's Petition,

brought pursuant to 28 U.S.C. § 2254, does not challenge the legality of his conviction or sentence, but instead alleges that he was denied due process when the San Mateo County Superior Court failed to overturn a 2004 denial of parole by the Board of Parole Hearings (hereafter, "Board"). (Pet. at § B and attached pages.) Giovinco contends his due process rights were violated when: (1) the San Mateo County Superior Court erred in denying his petition for writ of habeas corpus; (2) the Board, by denying his 2004 parole request, ignored the fact that state prisoners serving indeterminate life sentences have a protected liberty interest in parole, specifically by repeated use of the commitment offense as grounds to deny parole; (3) the Board's denial, and its inherent finding that Giovinco remains unsuitable for parole and dangerous to public safety, failed to meet the required "some evidence" standard; (4) the Board relied on unconstitutionally vague state regulations in denying parole; (5) the Board failed to properly consider factors demonstrating Giovinco's suitability for parole; (6) the Board's parole denial violated the legislative intent of California's sentencing guidelines; and (7) the Board conducted the hearing under an unconstitutional "No Parole Policy" for California term-to-life prisoners. (*Id*.)

Giovinco filed a petition for writ of habeas corpus in the San Mateo Superior Court, which that court denied on January 4, 2006 in a reasoned order. (Answer, Ex. 3.) He then filed a habeas petition in the California Court of Appeal, which was denied on April 27, 2006, without reasoned decision or citation to authority. (Answer, Ex. 5.) Giovinco then filed a petition for writ of habeas corpus in the California Supreme Court, raising the claims he now raises in this federal petition. (Answer, Ex. 4.) The California Supreme Court denied the petition without reasoned decision or citation to authority on January 17, 2007. (Answer, Ex. 7.)

Giovinco filed the Petition in this case on February 21, 2007. Respondent filed an Answer and accompanying Memorandum of Points and Authorities on April 17, 2008. Giovinco filed a Traverse on June September 12, 2008 [doc. no. 15]. The Court has now considered the Petition, Answer, Traverse, and all the supporting documents submitted by the parties. Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court **DENIES** the Petition.

## II. THE 2004 SUBSEQUENT PAROLE CONSIDERATION HEARING

On September 21, 2004, Giovinco appeared before a panel of two Board commissioners, Presiding Commissioner Booker Welch and Deputy Commissioner Gretchen Garner-Easter, for a Subsequent Parole Consideration Hearing (hereafter "the hearing"). (Answer, Exh. 2, Hearing Transcript (hereafter "HT") at 1-2). Giovinco was represented by counsel Marcia Hurst. (HT at 2.) Before the hearing, Giovinco and his attorney "had a fairly lengthy opportunity to discuss all the case factors," and Ms. Hurst acknowledged that Giovinco had received the procedural due process due him in the context of the hearing. (HT at 8, 10.) The Presiding Commissioner summarized the purpose of the hearing as follows:

> [¶] . . . The purpose of today's hearing is to once again consider your suitability for parole. We will consider the nature and the number of the crimes that you were committed for, your prior criminality, your social history and your behavior and programming since your commitment. . . .
> . . .
> [¶] . . . We will consider your progress since your last hearing, any new psychiatric reports, any other information that may have a bearing on your suitability for parole. Any change in parole plans should be brought to our attention.
> . . .
> [¶] . . . The Board of Prison Terms' rules and the law basically state that a parole date shall be denied you if in the opinion of the two Commissioners your parole would pose an unreasonable risk of danger to others. . . .

(HT at 8-10.)

Giovinco objected to Presiding Commissioner Welsh's presence on the panel "due to past experience with [him] in the hearing." (HT at 10.) Commissioner Welch, after hearing Giovinco's objection, overruled it. (HT at 15.)[1] When the subject of the hearing turned to self-help, specifically substance abuse treatment, Giovinco stated "I am not going to participate in anymore of [Alcoholics Anonymous], [Narcotics Anonymous]." (HT at 37.) When Deputy Commissioner Garner-Easter asked him "[a]nd why not?," Giovinco replied, "I'm going to plainly state this right

---

[1] Giovinco's attorney, Ms. Hurst, explained that Giovinco was concerned that Presiding Commissioner Welch, who was a panel member at Giovinco's previous Subsequent Parole Consideration Hearing, was willfully misled by a photograph showing knives in the victims' wounds, when in fact the knives were placed there by the coroner, and the murder weapon was never found. (HT at 15-16.)

1 | now, I am not going to do it." (*Id.*)

2 | When reviewing the report prepared by the institution for the hearing, Deputy

3 | Commissioner Garner-Easter stated:

> [¶] . . . And for the purposes of this Panel, this hearing – this Panel is most interested in the assessment of dangerousness and just to get a feel for what your counselor feels in terms of your adjustment and if you were to get a prison – date what type of degree of threat you'd pose if released. And Counselor Ruda [author of the report] says: "Considering the commitment offense, the prior record and the prison adjustment, this writer believes the prisoner would pose a moderate degree of threat to the public if released at this time."

(HT at 39.)  A portion of a psychiatric report, prepared for the hearing, was read into the record on the issue of Giovinco's potential for future violence in the community:

> [¶] "For 16 years the inmate has been able to program without violence.  He is 43-years-old now, not 20.  He has stable employment prospects and a supportive family.  The most important risk factor is alcohol.  He appears to be exceptionally vulnerable to the impact of alcohol on thinking.  Street drugs did not appear to be a factor.  With continued abstinence from alcohol, the estimated risk of dangerousness in the community is low."

(HT at 40-41.)

After further statements by Giovinco and his attorney, and the opportunity to submit documentation to the Board, Deputy District Attorney Wagstaffe urged the Board to find that Giovinco was "nowhere fit for parole at this time," specifically referencing Giovinco's negative attitude toward alcohol programming. (HT at 54-56.)  Thereafter, Giovinco, who had been somewhat combative throughout the hearing, "flipped off" the deputy district attorney. (HT at 63.) The Board took a recess and then rendered its decision:

> [¶] Okay.  The Panel reviewed all information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.  One, the offense was carried out in an especially cruel and callous manner.  The offense was carried out in a dispassionate manner.  The motive for the crime was inexplicable. . . . The prisoner has programmed in a somewhat acceptable manner since his last hearing.  A recent psychological evaluation shows that the prisoner is making progress, shows that his level of dangerousness is reduced both in a structured as well as an unstructured environment.  However, . . . in this report that's dated April 23, . . . 2004, Dr. Van Couvering indicate[s] a precursor to violence would certainly be his use of alcohol.  So that's certainly a concern. . . . The Panel finds that the prisoner needs to really make an effort to develop some insight into his commitment offense.  He needs to make an effort to fine-tune his ability to make a presentation before the Board of Prison Terms.  He should also definitely make an effort to show respect to the

4

officials that's [sic] presiding at the – at his hearing. . . . He should also involve himself in the kinds of programs, the kind that would enable him to be able to face, discuss, understand and cope with stress in a nondestructive manner. Certainly alcohol prevention would be at the top of the list. . . . Until enough progress is made, the prisoner continues to be unpredictable and a threat to others. . . . The prisoner's parole is denied for three years.

. . .

[¶] . . . The prisoner has not completed the necessary programming which is essential to his adjustment, and that certainly includes substance abuse. As I previously mentioned, alcohol should be at the top of the list. Anger control, stress control and basically self-control, those kinds of things, those kinds of programs, the prisoner needs to be able to demonstrate that he can control himself . . . .The Panel recommends that the prisoner remain disciplinary-free and that he continue – that he (indiscernible) to participate in self-help programs, especially a substance abuse program. . . .

(HT at 64-65, 66-67, 68-69.)

## III.    DISCUSSION

### A.    Scope of Review

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

[¶] The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C. § 2254(a) (West 2008) (emphasis added). As amended, 28 U.S.C. § 2254(d) reads:

[¶] (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –

[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

[¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (West 2008) (emphasis added).

"[The Antiterrorism and Effective Death Penalty Act ("AEDPA")] establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Womack v. Del Papa*, 497 F. 3d 998, 1001 (9th Cir. 2007),

quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).  To obtain federal habeas relief, Giovinco must satisfy either § 2254(d)(1) or § 2254(d)(2).  *See Williams v. Taylor*, 529 U.S. 362, 403 (2000).  The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).  The "objectively unreasonable" standard is not met by a showing of error or of an incorrect application (as opposed to an objectively unreasonable application) of the governing federal law.  *Andrade,* 538 U.S. at 75; *Woodford,* 537 U.S. at 25; *Bell v. Cone*, 535 U.S. 685, 694, 699 (2002) ("it is not enough to convince a federal habeas court that, in its independent judgment, the state court decision applied [the Supreme Court precedent] incorrectly").  As the Supreme Court explained, this standard is different from the "clear error" standard in that "[t]he gloss of clear error fails to give proper deference to state court by conflating error (even clear error) without unreasonableness." *Andrade,* 538 U.S. at 75.

Where there is no reasoned decision from the state's highest court, this Court "looks through" to the underlying appellate court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  A state court, however, need not cite Supreme Court precedent when resolving a habeas corpus claim.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law.  *Id.*  In Giovinco's case, the California Supreme Court, as well as the appellate court, denied his habeas petition without furnishing a basis for its decision.  (Answer, Exs. 5 & 7.)  Accordingly, this Court "looks through" to the reasoning provided by the San Mateo County Superior Court in denying Giovinco's habeas petition filed there.  That court stated:

> [¶] The grounds for relief alleged in the petition are: 1) The Board's failure to apply the controlling legal principals [sic] properly at Petitioner's parole suitability hearing denied Petitioner his constitutional rights, 2) The Board improperly abused

its discretion in violation of due process in conducting the parole hearing as the evidence was not sufficient to support a decision that Petitioner was unsuitable for parole and the hearing was not fair and impartial, 3) The failure to grant Petitioner parole obliterates the legislative intent of the recommended sentencing guidelines, and 4) The Board conducted the hearing with a no-parole policy for term-to-life prisoners.

. . .

> "Penal Code section 3040 gives the Board the power to allow prisoners sentenced to indeterminate terms to go on parole outside the prison walls and enclosures. The Legislature has specified that one year prior to the inmate's minimum eligible release date, a panel of at least two commissioners of the Board shall meet with the inmate and shall normally set a parole release date (Pen. Code, § 3041, subd. (a).) However, the panel or the Board need not set a release date if "it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." (Pen. Code, § 3041, subd. (b).)

(In Re Morral (2002) 102 Cal.App.4th 280, 289, see also In Re Dannenberg (2005) 34 Cal.4th 1061, 1079.)

> "Accordingly, we conclude that the judicial branch is authorized to review the factual basis of a decision of the Board denying parole in order to ensure that the decision comports with the requirements of due process of law, but that in conducting such a review, the court may inquire only whether some evidence in the record before the Board supports the decision to deny parole, based upon the factors specified by statute and regulation. If the decision's consideration of the specified factors is not supported by some evidence in the record and thus is devoid of a factual basis, the court should grant the prisoner's petition for writ of habeas corpus and should order the Board to vacate its decision denying parole and thereafter to proceed in accordance with due process of law. (See *In re Ramirez, supra*, 94 Cal.App.4th at p. 572; *In re Bowers* (1974) 40 Cal. App. 3d 359, 362 [114 Cal. Rptr. 665].)"

(In re Rosenkrantz (2002) 29 Cal.4th 616, 658.)

[¶] The "some evidence" standard of review for parole decisions is not a violation of due process and is properly used in parole proceedings under both California and Federal law. (McQuillion v. Duncan (9th Cir. 2002) 306 F.3d 895, 905-906, *citing In Re Powell* (1988) 45 Cal.3d 894, and *In Re Caswell* (2002) 92 Cal.App.4th 1017.)

[¶] The record of Petitioner's parole hearing indicates that there was some evidence to support the Board's decision to deny him parole. The Board considered the relevant factors under Title 15 of the California Code of Regulations §§ 2041 and 2402 and based its decision on more than just the commitment offense. There is nothing in the record to indicate that the hearing was not fair and impartial. There was also no violation of due process because the Board was not required to consider the time limits set out in the matrix in determining Petitioner's suitability for parole. (Dannenberg, supra, 34 Cal.4th at 1095-1096.) Thus, the Board's decision to deny

> Petitioner a parole release date was proper.  (Dannenberg, supra, 34 Cal.4th at 1094-1096.)
>
> . . .
>
> [¶] A review of the Information [sic] submitted by Petitioner does not sufficiently show that the Board has a practice of conducting parole hearings based on a no-parole policy for term-to-life prisoners.  The Board is permitted to find an inmate unsuitable for parole without comparing his offense or period of confinement to other cases.  (Dannenberg, supra, 34 Cal.4th at 1093.)  It is also not legislatively or statutorily required to set a release date if it determines that an inmate is unsuitable as it did with Petitioner in the instant case.  (Id. at 1087-1093.)  Consequently, it has not acted outside its authority as contended by Petitioner.  (Id. at 1094-1095.)

(Answer, Ex. 3 at 1-4.)

**B.     Analysis**

Giovinco claims that his due process rights were violated when:  (1) the San Mateo County Superior Court erred in denying his petition for writ of habeas corpus; (2) the Board, by denying his 2004 parole request, ignored the fact that state prisoners serving indeterminate life sentences have a protected liberty interest in parole, specifically by repeated use of the commitment offense as grounds to deny parole; (3) the Board's denial of parole, and its inherent finding that Giovinco remains unsuitable for parole and dangerous to public safety, failed to meet the required "some evidence" standard; (4) the Board relied on unconstitutionally vague state regulations in denying parole; (5) the Board failed to properly consider factors demonstrating Giovinco's suitability for parole; (6) the Board's parole denial violated the legislative intent of California sentencing guidelines; and (7) the Board conducted the hearing under an unconstitutional "No Parole Policy" for California term-to-life prisoners.  (Pet. at § B and attached pages.)

In California, parole suitability hearings address the issue of whether prisoners should be released on parole after serving their minimum terms.  Pursuant to California Penal Code § 3041, ". . . prior to [an] inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and shall normally set a parole release date . . . ."  Prisoners serving indeterminate life sentences that include the possibility of parole are not entitled to release on parole, but they are entitled to be considered for parole.  *In re Dannenberg*, 34 Cal.4th 1061, 1078, 1080 (2005).  The parole consideration criteria applicable to life prisoners convicted of murder (convicted on or after November 8, 1978) are as follows:

(a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. **Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison**.

(b) Information Considered. **All relevant, reliable information available to the panel shall be considered in determining suitability for parole.** Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

(CAL CODE OF REGS. tit. 15, § 2402 (a) & (b) (2008) (emphasis added))[2].

Only errors of federal law can support federal intervention in state court proceedings, and only to correct such errors. *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989) (stating that federal courts are not concerned with errors of state law unless they rise to the level of a constitutional violation). Additionally, federal habeas courts are bound by the state's interpretation of its own laws. *Himes v. Thompson*, 336 F.3d 848, 852 (9th Cir. 2003); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that federal courts may not reexamine state court determinations on state law issues). It is well established that there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). Nevertheless, a state can create "a liberty interest protected by the due process guarantees" when its parole scheme employs "statutory language [that] itself creates a protectible expectation of parole." *Greenholtz*, 442 U.S. at 11-12; *see Board of Pardons v. Allen*, 482 U.S. 369, 376 (1987); *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 463 (1989). The Ninth Circuit has repeatedly held that the mandatory language of § 3041(a) vests inmates with a cognizable liberty interest in a parole date. *See, e.g.*, *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002)

---

[2] Unchanged from the 2006 version.

1 (holding that a California state prisoner serving a life sentence has a cognizable liberty interest in
2 release on parole, based on California's parole scheme closely resembling those interpreted in
3 *Greenholtz* and *Allen*).

4     It is clearly established Supreme Court law that:

> [T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . . This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . ." *United States ex rel Vajtauer v. Commissioner of Immigration*, 273 U.S. [103] at 106 [1927]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, **the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board**.

10 *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (emphasis added); *Irons v. Carey*, 505 F.3d
11 846, 851 (9th Cir. 2007) (applying decision in *Hill* to parole board decisions). A federal habeas
12 court's analysis to determine whether a parole denial was supported by "some evidence" is
13 "framed by the statutes and regulations governing parole suitability determinations in the relevant
14 state." *Irons*, 505 F.3d at 851 ("the Supreme Court [has] clearly established that a parole board's
15 decision deprives a prisoner of due process with respect to this interest if the board's decision is
16 not supported by 'some evidence in the record' . . . or is 'otherwise arbitrary'"), *quoting Sass*, 461
17 F.3d at 1128-29, *citing Hill*, 472 U.S. at 457. In reliance on that authority, the *Irons* court
18 concluded: "Accordingly, here we must look to California law to determine the findings that are
19 necessary to deem a prisoner unsuitable for parole, and then must review the record in order to
20 determine whether the state court decision holding that these findings were supported by 'some
21 evidence' in [the petitioner's] case constituted an unreasonable application of the 'some evidence'
22 principle articulated in *Hill* . . . ." Irons, 505 F.3d at 851.

23     Giovinco contends, essentially, in Claims 1, 2, 3, and 5 that the Board's decision denying
24 him a parole date was incorrect under governing law. However, the Board's refusal to grant
25 Giovinco a parole date was supported by some evidence, and some evidence is all that is required.
26 As set forth in Section II above, the Board found that Giovinco posed an unreasonable risk of
27 danger to society if released from prison. (*See* HT at 64-69.) The Board based its decision on
28 several factors, but chiefly the nature of the commitment offense and the fact that Giovinco

adamantly refused to participate in an alcohol abuse program while incarcerated. (*Id*.) Because the psychologist's report indicated that Giovinco's use of alcohol could lead to violence (and Giovinco was, in fact, drinking at the time he committed the crime), some evidence plainly exists to support the Board's decision to deny parole.

Specifically with respect to Claim 1, the San Mateo County Superior Court did not err in denying Giovinco's petition for writ of habeas corpus, for the reasons set forth herein. With respect to Claim 2, the Board did not ignore the fact that state prisoners serving indeterminate life sentences have a protected liberty interest in parole. Giovinco's case was considered using the appropriate state law standards, and the Board denied him parole based not only on the nature of the commitment offense, but on other grounds, as set forth herein. With respect to Claim 3, the parole denial, and its inherent finding that Giovinco remained unsuitable for parole and dangerous to public safety, did meet the "some evidence" standard, as discussed above, contrary to Giovinco's assertion. And, with respect to Claim 5, while it is irrelevant to this Court's habeas analysis whether the Board considered factors demonstrating Giovinco's suitability for parole (since the required "some evidence" supported the parole denial), the Board in fact did consider numerous factors showing his parole suitability. (*See* HT at 28, 29, 40-1, 52, 66-7.) Accordingly, the state court's denial of these claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13.

In Claim 4, Giovinco asserts that the Board relied on unconstitutionally vague state regulations in denying parole; however, Giovinco has provided this Court with no authority (and the Court is aware of none) that supports this position. In Claim 6, he contends that the Board's parole denial violated the legislative intent of California sentencing guidelines. Federal habeas courts are bound by the state's interpretation of its own laws and, thus, this Court may not reexamine the state court's determination that Giovinco's parole denial complied with state law principles and sentencing guidelines. *Himes*, 336 F.3d at 852; *Estelle v. McGuire*, 502 U.S. at 68.

Finally, in Claim 7, Giovinco argues that the Board conducted the hearing under an unconstitutional "No Parole Policy" for California term-to-life prisoners. Again, he has provided this Court with no evidence or authority (and the Court is aware of none) to support the claim.

Because there was "some evidence" to support the parole denial, and "some evidence" is all that is required under the Due Process Clause, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13. Accordingly, the Petition is **DENIED**.

## V.  CONCLUSION

For all the foregoing reasons, the Petition is **DENIED WITH PREJUDICE**.

**IT IS SO ORDERED.**

DATED: June 2, 2009

_____
JOHN A. HOUSTON
United States District Judge